FILED
CHARLOTTE, NC

FEB 0 6 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

Case No. 3:26-CV-97-MEO

| | | |
|---|---|---|
| MARQUIS A. HAIRSTON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| **vs.** | ) | **(Jury Trial Demanded)** |
| | ) | |
| Officer GRAZIER-ZERBARINI, | ) | |
| Officer BAILEY JR. | ) | |
| | ) | |
| Officer SETH MARTIN, Officer | ) | |
| JACOB GARRESTON, Officer | ) | |
| MARSHALL REECE, in their | ) | |
| Individual and official capacities, | ) | |
| THE CITY OF CHARLOTTE | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**NOW COMES** Plaintiff, complaining of Defendants, and alleges and says as follows:

**INTRODUCTORY STATEMENT**

1.  On August 27, 2021, Plaintiff Marquis A. Hairston was unlawfully arrested at his

    residence by Charlotte-Mecklenburg Police Department officers without probable cause.

    Officers misrepresented their identity, failed to present a warrant, and used false

    information to initiate criminal proceedings. Plaintiff was charged with misdemeanor

    child abuse under N.C. Gen. Stat. § 14-318.2 and assault on a female under N.C. Gen.

    Stat. § 14-33(c)(2). These charges arose from false claims that Plaintiff physically abused

1

his daughter. In truth, Plaintiff had been asked to intervene in a disciplinary matter after his daughter used profane language and was disrespectful toward her teachers, mother, and sibling. The charges were ultimately dismissed in 2023.

2. On March 3, 2023, Plaintiff had all criminal charges terminated in his favor. The charges were formally expunged pursuant to N.C. Gen. Stat. § 15A-146(a2), confirming the baselessness of the prosecution.

3. Plaintiff, therefore, brings this civil rights action against Defendants, pursuant to 42 U.S.C. § 1983, for the unreasonable seizure of his person through initiating criminal proceedings without probable cause in violation of the Fourth Amendment to the United States Constitution.

4. Plaintiff seeks to recover compensatory damages and punitive damages from Defendants in their individual and official capacities.

## JURISDICTION AND VENUE

11. Plaintiff brings this civil action under 42 U.S.C. § 1983 for acts committed by Defendants under color of state law which violated Plaintiff's right not to be subject to an unreasonable seizure of his person through the initiation of criminal proceedings without probable cause under the Fourth Amendment to the United States Constitution.

12. Plaintiff's action arises under the Constitution and laws of the United States.

13. The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to these claims occurred in Mecklenburg County, North Carolina, within the Western District of North Carolina.

15. The Charlotte Division is the proper division for this case in the United States District Court for the Western District of North Carolina.

16. Plaintiff's claims accrued after the favorable termination of criminal proceedings in or around March 2023. This action is timely filed within the applicable statute of limitations.

17. Plaintiff has filed this civil action within three years of the accrual of his federal civil rights claim.

## PARTIES

18. Plaintiff Marquis A. Hairston ("Plaintiff") is a citizen and resident of the State of Virginia. When the events giving rise to this action occurred, he was residing in Charlotte, North Carolina at a Hilton Hotel.

19. Defendant City of Charlotte is a municipal corporation formed under the laws of North Carolina. Upon information and belief, the City of Charlotte has purchased liability insurance and/or participates in a municipal risk-pooling scheme sufficient under N.C. Gen. Stat. § 160A-485 to waive its immunity against civil liability. The City of Charlotte operates the Charlotte-Mecklenburg Police Department ("CMPD"), which is the City department having law-enforcement authority in the City of Charlotte.

20. The City of Charlotte bears legal responsibility for the intentional torts and negligent acts of CMPD officers in the course of their employment. The City is responsible for the

appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named Defendants herein. Defendant City of Charlotte, at the time of the incidents giving rise to this action, had waived governmental or sovereign immunity from state-law tort claims up to a certain dollar amount, pursuant to N.C. Gen. Stat. § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance.

21. Additionally, Defendant City of Charlotte, at the time of the incidents giving rise to this action, waived governmental or sovereign immunity by operation of § 2-3 of its Code of Ordinances.

22. Defendants O. Bailey, Jr. (P6413), Seth Martin (Badge No. 6259), Jacob Garreston (Badge No. 6283), and Marshall Reece (Badge No. 6175) were officers employed by CMPD and are sued only in their individual and official capacities.

23. Upon information and belief, Defendant O. Bailey, Jr. (P6413), is a resident of Mecklenburg County, North Carolina.

24. Upon information and belief, Defendant Seth Martin (Badge No. 6259), is a resident of Mecklenburg County, North Carolina.

25. Upon information and belief, Defendant Jacob Garreston (Badge No. 6283), is a resident of Mecklenburg County, North Carolina.

26. Upon information and belief, Defendant Marshall Reece (Badge No. 6175), is a resident of Mecklenburg County, North Carolina.

27. Defendants John Does 1–5 are unidentified officers or agents of the City of Charlotte or Mecklenburg County whose conduct violated Plaintiff's constitutional rights. Plaintiff will amend the complaint upon identification of these individuals.

4

28. Defendants worked as sworn law-enforcement officers with CMPD on the date of Plaintiff's arrest.

29. Defendants acted under color of state law as police officers with CMPD when they investigated the allegations of child abuse against Plaintiff and initiated the warrants for arrest on August 26, 2021, as alleged herein.

30. The criminal charges were ultimately dismissed and expunged on March 1, 2023.

31. Defendants are sued in their individual and official capacities for claims arising under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

32. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

33. Plaintiff is a resident of the State of Virginia at all times relevant to this action, held a Top Secret "CI" security clearance due to his employment with a federal government entity. The actions of Defendants placed Plaintiff's security clearance and livelihood in jeopardy.

34. On or about August 27, 2021, officers with CMPD, including Defendants Officer Bailey (P6413), Officer Martin (Badge No. 6259), Officer Grazier-Zerbarini (Badge No. 006362), and others yet to be identified, initiated an unlawful and warrantless arrest of Plaintiff based on uncorroborated allegations of misdemeanor child abuse and assault on a female.

35. On or about August 27, 2021, at approximately 3:00 to 4:00 a.m., officers from CMPD, including Defendants Martin (Badge No. 6259), Garreston (Badge No. 6283), and Reece

5

(Badge No. 6175), arrived at Plaintiff's location. These officers falsely posed as maintenance personnel and did not identify themselves as law enforcement at the outset.

36. Defendant Grazier-Zerbarini took a victim's statement of Plaintiff's daughter, Jane Doe (age 14). The victim told Defendant that on August 26, 2021, her father, Marquis Hairston, took her to his hotel room (Hilton Charlotte Uptown). Once inside, he removed his belt, struck her repeatedly (around 20 times) on her face, arms, legs, back, and stomach, and ripped her shirt collar during the assault. She described trying to defend herself by holding a lamp before he attacked.

37. However, Defendant officers did not have independent, corroborating witnesses—the primary "evidence" came from the child's statement and the mother's report.

38. No neutral third-party witness corroborated the allegations.

39. The Defendant officers did not personally witness the incident.

40. The responding officer observed and documented visible red welts under Jane Doe's left eye, on both upper arms, wrists/hands, her back, right thigh, and stomach. Upon information and belief, photos were taken and uploaded into evidence systems.

41. Upon information and belief, reports claim the child had red welts and scratches. Photos were taken, but there is no record of medical evaluation confirming abuse severity or whether marks could have been caused by something else. No "old or healing injuries" were found.

42. Officer Grazier-Zerbarini confirmed the injuries were consistent with Kaelani's account, took photographs, and prepared the investigative report that supported obtaining the warrant.

6

43. Jane Doe's mother, Chanae Pennington, reported that her daughter returned home with the injuries and disclosed what happened. Pennington confirmed ongoing issues between Jane Doe and her father and stated Plaintiff had not visited since the prior year, but was supposed to only transport the children during this visit. She provided background of prior incidents with Plaintiff.

44. The mother, Chanae Pennington, had prior disputes with Plaintiff.

45. DSS intake reports themselves note "past incidents with father" and "past police reports."

46. Defendant officers relied heavily on the child's written statement (included in the files). But the statement was taken by Officer Grazier-Zerbarini, on her behalf, not independently authored, raising reliability issues.

47. A warrant for arrest was issued the same day as the report without thorough investigation (e.g., no interviews with Plaintiff's other child who was allegedly present in the car).

48. The officers did not document whether Plaintiff provided an alternative explanation (discipline, self-defense when daughter grabbed lamp, or fabricated claim).

49. At the time of warrant issuance:

    a. Defendants' probable cause was based on uncorroborated, potentially biased statements.

    b. There was an absence of medical/forensic confirmation.

    c. Defendant officers omitted exculpatory facts and context (custody disputes, lack of prior convictions).

50. When Defendant officers arrived at Plaintiff's hotel room, they intentionally disguised their presence as maintenance personnel to deceive Mr. Hairston into opening his door, thereby circumventing constitutional protections that apply to one's dwelling—even a temporary residence such as a hotel room.

51. Plaintiff, unaware of their true identity, opened the door. He was immediately seized, handcuffed, and placed under arrest without being shown a warrant, advised of the charges, or read his Miranda rights. Plaintiff did not resist arrest at any time.

52. The officers did not have a valid arrest warrant when they approached or seized Mr. Hairston, and they did not present or reference any such warrant before arresting him.

53. The officers did not attempt to confirm Plaintiff's identity prior to effecting the arrest.

54. Defendants relied solely on the hotel front desk's room assignment to locate the alleged suspect, thereby compounding the recklessness of the seizure.

55. The arrest occurred without exigent circumstances, without voluntary consent, and without the alleged victim present at the hotel or nearby. The arresting officers had no legal justification to bypass judicial oversight or entry requirements under *Payton v. New York*, 445 U.S. 573 (1980).

56. Only after Plaintiff had been detained and placed inside a police vehicle was a purported warrant presented to him. The arrest was executed without probable cause, violating Plaintiff's Fourth and Fourteenth Amendment rights.

57. The charges against Mr. Hairston were based entirely on statements by the child's mother, an individual who was engaged in a custody dispute with Mr. Hairston and who had a motive to interfere with his visitation rights.

8

58. The CMPD officers failed to corroborate the complainant's account through independent evidence, medical records, witness statements, or any other means. No physical injuries were documented, no photographs taken, and no interview of Plaintiff was conducted before charges were filed.

59. Officers falsely alleged that Plaintiff had used a belt to strike his daughter, causing visible injuries, including scratches and bruises. These claims were uncorroborated and based solely on hearsay statements from the child's mother, despite Plaintiff having been called to assist with discipline due to the child's behavioral outbursts at school and home.

60. The affidavit in support of the arrest warrant alleged child abuse but failed to mention that DSS conducted no investigation and made no finding of abuse. It also omitted that the incident arose in the context of lawful parental discipline following school misconduct.

61. Plaintiff was later subjected to criminal proceedings based on false and fabricated information allegedly authored or promoted by Defendant Grazier-Zerbarini and/or Defendant J.R. Whitner, including sworn affidavits submitted to a magistrate or judicial officer.

62. Following Plaintiff's arrest and the filing of charges, Plaintiff was served with a § 15A restraint order, barring him from contact with his minor daughter. This order was issued despite the absence of credible evidence, violating Plaintiff's substantive and procedural due process rights under the Fourteenth Amendment.

63. Defendants, including Kyle Huggins and unidentified John Doe defendants, are alleged to have conspired to deprive Plaintiff of his constitutional rights, including by failing to

provide him timely access to trial information and repeatedly stating he "was going to be found guilty," regardless of the facts.

64. From August 2021 through March 2023, Plaintiff was labeled a child abuser and criminal, despite the lack of evidence and the eventual dismissal of all charges. Plaintiff was deprived of his liberty, familial relationship with his child, and professional reputation during this period.

65. The affidavit in support of the arrest warrant falsely alleged physical abuse. It omitted material facts, including that Plaintiff had been called to assist in disciplining his daughter for her defiant behavior at school and home. The magistrate issued the warrant based on incomplete and misleading information.

66. The Department of Social Services never substantiated abuse findings. DSS was not involved in the investigation that led to the arrest, and no corroborating evidence was presented to justify the charges.

67. The warrant affidavit relied, in part, on vague or prejudicial references to prior incidents that had no bearing on the conduct at issue and were not substantiated by any adjudicated findings. This misuse of character evidence further demonstrates the officers' recklessness in seeking criminal charges.

68. The charges remained pending from December 26, 2022, until March 3, 2023, when the charges were dismissed.

69. Mr. Hairston was prosecuted for more than a year before all charges were terminated in his favor in March 2023.

70. Defendants acted with malice in initiating and pursuing criminal charges against Plaintiff.

71. Defendants knowingly relied on uncorroborated and biased accusations from a family member engaged in an ongoing custody dispute, while deliberately omitting exculpatory information, including the absence of medical documentation, lack of independent witnesses, and the minor nature of the alleged injuries.

72. Defendants further prepared and submitted materially misleading reports, including drafting a written statement on behalf of the alleged victim, rather than securing an independent account in the victim's own words.

73. In doing so, Defendants acted not out of a good-faith belief that a crime had occurred, but with reckless disregard for the truth and with intent to deprive Plaintiff of his liberty, reputation, and parental relationship. The criminal proceedings were pursued with ill will and spite toward Plaintiff, culminating in his arrest, prosecution, and public humiliation, despite the ultimate dismissal and expungement of all charges.

74. Upon information and belief, Officer Seth Martin (Badge No. 6259) is listed as the arresting officer in the Mecklenburg County Arrest Processing Center records. He executed the arrest on August 27, 2021, at approximately 4:34 a.m., after the warrant was issued. His role was primarily custodial: carrying out the arrest warrant once probable cause had been found by the magistrate.

75. Upon information and belief, Officer Jacob Garreston is one of the officers involved in the incident follow-up. His role appears to have been supporting patrol/scene duties, but he was not listed as the officer preparing the investigative narrative.

76. Upon information and belief, Officer Marshall Reece, like Garreston, is tied to the incident paperwork. His role was supportive/backup—assisting with the case processing

and responding to the call. His presence indicates he was part of the initial law-enforcement response team.

77. Officer Yael Grazier-Zerbarini (Badge No. 006362) was the lead investigating officer. She was dispatched on August 26, 2021, to the victim's residence after the alleged incident. She interviewed the reporting person (Chanae Pennington) and the victim, Jane Doe. She documented visible injuries, took photographs, and prepared written statements (including drafting one for the victim to sign). She authored the incident reports, crime narrative, and supplemental reports that were later used to obtain the arrest warrant. She coordinated with Officer Bailey to secure warrants from a magistrate. Her role was central: framing the case for prosecution through evidence gathering and report writing.

78. Defendants Martin, Garreston, Reece, and Grazier-Zerbarini, acting individually and in concert, conspired to initiate and pursue criminal charges against Plaintiff without probable cause.

79. Each Defendant knowingly relied on uncorroborated and biased allegations, ignored or omitted exculpatory evidence, and failed to conduct a fair or impartial investigation. By preparing, submitting, and executing reports and warrants that were materially misleading, and by arresting Plaintiff without independent review of the facts, Defendants acted jointly with malice and reckless disregard for Plaintiff's constitutional rights. Their coordinated actions were undertaken with ill will toward Plaintiff and with the purpose of causing his unlawful arrest, prosecution, humiliation, and separation from his family, in violation of the Fourth and Fourteenth Amendments.

80. CMPD's own Internal Affairs Reports reveal a persistent pattern of unconstitutional arrests, searches, and seizures.

81. In 2020, CMPD recorded 13 such complaints. Of these, 44% were sustained, meaning the investigation disclosed sufficient evidence to prove the allegations of unconstitutional conduct. Others were exonerated, meaning the acts occurred but were deemed lawful and proper, and some were found unfounded, meaning the incident never occurred or the officer was not involved.

82. In 2023, CMPD again reported arrest, search, and seizure allegations, with 7% sustained, 15% not sustained, 77% exonerated, and the remainder pending.

83. The very fact that multiple allegations were sustained in both 2020 and 2023 demonstrates that CMPD officers engaged in unlawful searches and seizures in violation of the Fourth Amendment, and that the Department itself officially found sufficient evidence to prove those violations. These repeated findings put policymakers on actual notice of systemic constitutional violations, yet CMPD failed to implement adequate training, discipline, or supervision to prevent recurrence. This deliberate indifference by the City was the moving force behind the unlawful seizure of Plaintiff.

84. Defendants acted under color of state law at all relevant times and in their individual capacities. Their actions were taken willfully, maliciously, and in bad faith, without regard for Plaintiff's constitutional rights.

85. As a result of Defendants' actions, Plaintiff suffered:

a. Emotional distress;

b. Damage to his professional and personal reputation;

c. Loss of contact with his daughter;

13

d. Financial harm and career consequences due to the jeopardy to his security clearance;

e. Pain and suffering during arrest and detention; and

f. Public humiliation, embarrassment, and mental anguish.

86. Plaintiff brings this action for violations of the Fourth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983, including claims for malicious prosecution.

87. Plaintiff seeks compensatory, special, and punitive damages in an amount to be determined at trial and declaratory relief under 28 U.S.C. § 2201.

88. Defendants Martin, Garreston, Reece, Grazier-Zerbarini, and Bailey acted intentionally, maliciously, and with reckless disregard for Plaintiff's federally protected rights when they fabricated evidence, omitted exculpatory facts, swore out a false criminal complaint, and caused Plaintiff to be unlawfully seized and prosecuted without probable cause.

89. Defendants' conduct was willful, wanton, and undertaken with actual malice, spite, and ill will toward Plaintiff, and with reckless indifference to the consequences of their actions.

90. The wrongful acts of these Defendants were not isolated incidents but part of a pattern of misconduct that demonstrates a conscious disregard for the constitutional rights of citizens.

91. As a result, Plaintiff is entitled to an award of punitive damages against the individual Defendants, in an amount to be determined by the jury, to punish them for their unlawful conduct and to deter them and others similarly situated from engaging in similar misconduct in the future.

92. Plaintiff does not seek punitive damages against the City of Charlotte, as municipalities are immune from punitive damages under 42 U.S.C. § 1983 and North Carolina law.

**FIRST CLAIM FOR RELIEF:**
UNREASONABLE SEIZURE THROUGH THE INITIATION OF CRIMINAL
PROCEEDINGS WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH
AMENDMENT
(Against Officers Seth Martin, Jacob Garreston, Marshall Reece, Yael Grazier-Zerbarini, and O.
Bailey, Jr., in their individual capacities)

93. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

94. At all times relevant to this action, Plaintiff had the right under the Fourth Amendment not to be prosecuted without probable cause.

95. Defendant Officer Seth Martin (Badge No. 6259) was, at all times relevant, a law-enforcement officer employed by CMPD, acting under color of state law. On August 27, 2021, Officer Martin executed the arrest warrant obtained by other officers, taking Plaintiff into custody without conducting any independent investigation or assessment of whether probable cause existed.

96. Defendant Officer Jacob Garreston was, at all times relevant, a law-enforcement officer employed by CMPD, acting under color of state law. Officer Garreston participated in the incident response related to the allegations against Plaintiff and assisted other officers in processing the case. Although he did not conduct a substantive investigation, Officer Garreston supported and enabled the continuation of criminal charges against Plaintiff without ensuring the accuracy or truthfulness of the allegations.

97. Defendant Officer Marshall Reece was, at all times relevant, a law-enforcement officer employed by CMPD, acting under color of state law. Officer Reece responded to the

incident and provided backup support to the investigating officers. He participated in the handling and transmission of information that formed the basis of the charges and, in doing so, allowed materially false and misleading evidence to be used against Plaintiff.

98. Defendant Officer Yael Grazier-Zerbarini (Badge No. 006362) was, at all times relevant, a law-enforcement officer employed by CMPD, acting under color of state law. Officer Grazier-Zerbarini was the lead investigating officer in Plaintiff's case. She interviewed the alleged victim and her mother, drafted and secured written statements, documented minor physical marks as "injuries," and authored police reports that omitted exculpatory facts, including the absence of medical evaluation, corroborating witnesses, or evidence of severe injury. Officer Grazier-Zerbarini presented these incomplete and misleading reports to secure an arrest warrant, thereby directly causing Plaintiff's unlawful seizure and prosecution.

99. Defendant Officer O. Bailey, Jr. (P6413), acting under color of state law, unreasonably seized Plaintiff by initiating criminal proceedings without probable cause. After Officer Grazier-Zerbarini conducted the initial investigation, Officer Bailey swore out the criminal complaint and presented it to a magistrate for the purpose of obtaining an arrest warrant. Officer Bailey did so without independently verifying the truthfulness or sufficiency of the allegations, despite knowing or recklessly disregarding that the evidence consisted only of uncorroborated statements, a written statement drafted by the investigating officer on behalf of the alleged victim, and minor marks not medically evaluated or forensically confirmed. By swearing to the existence of probable cause where none existed, Officer Bailey directly caused Plaintiff's unlawful arrest and

prosecution, in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

100.     Defendants, acting individually and in concert, initiated or caused the initiation of criminal charges against Plaintiff without probable cause by submitting fabricated, false, or materially misleading information and by omitting exculpatory facts, including the absence of credible evidence supporting abuse allegations.

101.     By initiating and continuing criminal proceedings without probable cause, and acting with malice, Defendants violated Plaintiff's rights under the Fourth Amendment to be free from unreasonable seizure and unlawful prosecution.

102.     The prosecution was initiated with malice and reckless disregard for Plaintiff's constitutional rights.

103.     The criminal proceedings terminated in Plaintiff's favor when all charges were dismissed in or around March 2023.

104.     The charges were subsequently expunged under North Carolina law as dismissals.

105.     Defendants' conduct violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

106.     As a direct and proximate result of Defendants' actions, Plaintiff suffered arrest, incarceration, reputational harm, loss of employment, loss of familial association, emotional distress, and other damages.

## SECOND CLAIM FOR RELIEF:

VIOLATIONS OF 42 U.S.C. § 1983 (*Monell* v. Dep't of Soc. Servs., 436 U.S. 658 (1978))
(Against the City of Charlotte directly and based on the actions of City employees and agents in their official capacities)

107.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

108.     The City of Charlotte is a "person," as that term is used in the text of 42 U.S.C. §
1983.

109.     CMPD's own Internal Affairs Reports reveal a persistent pattern of
unconstitutional arrests, searches, and seizures. In 2020, CMPD recorded 13 such
complaints. Of these, 44% were sustained, meaning the investigation disclosed sufficient
evidence to prove the allegations of unconstitutional conduct. Others were exonerated,
meaning the acts occurred but were deemed lawful and proper, and some were found
unfounded, meaning the incident never occurred or the officer was not involved. In 2023,
CMPD again reported arrest, search, and seizure allegations, with 7% sustained, 15% not
sustained, 77% exonerated, and the remainder pending. The very fact that multiple
allegations were sustained in both 2020 and 2023 demonstrates that CMPD officers
engaged in unlawful searches and seizures in violation of the Fourth Amendment, and
that the Department itself officially found sufficient evidence to prove those violations.
These repeated findings put policymakers on actual notice of systemic constitutional
violations, yet CMPD failed to implement adequate training, discipline, or supervision to
prevent recurrence. This deliberate indifference was the moving force behind the
unlawful seizure of Plaintiff.

**A. Officials with Final Policymaking Authority for CMPD Caused or Ratified the
Unconstitutional Conduct of Their Subordinates**

110.     Upon information and belief, officials in the City of Charlotte and CMPD with
final policymaking authority had contemporaneous knowledge through the chain of
command that CMPD officers—including Defendants Grazier-Zerbarini, Martin,

Garreston, and Reece—were fabricating and relying on incomplete and misleading investigative reports, omitting exculpatory information, drafting the alleged victim's statement themselves, mischaracterizing minor marks as evidence of child abuse, and presenting these materials to secure Plaintiff's arrest and prosecution.

111.     It would have been plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of Plaintiff's constitutional rights. Nevertheless, the City and CMPD officials agreed to, approved, and ratified this unconstitutional conduct by their subordinates.

## B. CMPD Had an Established Policy or Custom Permitting Officers to Advance Prosecutions Without Probable Cause

112.     Upon information and belief, CMPD maintained a policy, custom, or practice of permitting officers to present misleading and incomplete evidence to magistrates to obtain warrants, even where probable cause was lacking.

113.     Defendants Grazier-Zerbarini, Martin, Garreston, and Reece acted pursuant to this policy or custom in Plaintiff's case by advancing unsupported allegations, concealing exculpatory facts, and sustaining the criminal process without adequate evidence.

114.     As a direct and foreseeable consequence of this policy or custom, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## C. CMPD Failed to Supervise and Discipline Officers Engaged in Misconduct

19

115. Upon information and belief, City officials and CMPD policymakers were aware of prior incidents in which CMPD officers engaged in misconduct—including fabricating reports, omitting exculpatory facts, and initiating prosecutions without probable cause—but consistently failed to take adequate or meaningful steps to discipline or retrain those officers, or to implement corrective policies.

116. It would have been plainly obvious to a reasonable policymaker that such deliberate indifference would lead to deprivations of citizens' constitutional rights, including Plaintiff's rights.

117. As a direct and foreseeable consequence of this failure to supervise and discipline, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## D. Consequences of the City's Policies, Customs, and Ratification

118. As a direct and foreseeable consequence of these constitutional deprivations caused by the City of Charlotte's policymaking officials, customs and practices, and deliberate indifference, Plaintiff was unlawfully seized, arrested, and prosecuted without probable cause.

119. As a result of these unlawful actions, Plaintiff has suffered economic loss, reputational harm, loss of employment, emotional distress, loss of liberty, loss of familial association, and irreparable harm to his reputation.

120. As a further consequence, Plaintiff was required to retain counsel to represent him in the protracted criminal proceedings wrongfully pursued against him and incurred

expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

121.     The wrongful arrest and prosecution of Marquis Hairston occurred not as an isolated incident, but as the foreseeable result of systemic failures within CMPD, for which the City of Charlotte is liable under *Monell* v. Department of Social Services, 436 U.S. 658 (1978).

122.     At the time of Plaintiff's arrest on August 27, 2021, CMPD lacked and failed to enforce constitutionally adequate policies or training regarding (a) warrant verification, (b) pre-arrest identity confirmation, (c) hotel-guest privacy protections, and (d) limits on the use of deception during arrests absent judicial authorization.

123.     CMPD officers entered Plaintiff's hotel room by posing as maintenance staff without a warrant, exigent circumstances, or consent—an unconstitutional ruse under *Stoner v. California*, 376 U.S. 483 (1964), and *Payton v. New York*, 445 U.S. 573 (1980).

124.     No policy existed requiring officers to confirm the suspect's identity, review corroborating evidence, or verify that the alleged victim was present prior to making an arrest.

125.     The policies of the Defendant were not adequate to train its police officers to handle the usual and recurring situations with which they must deal, and the municipality was deliberately indifferent to the known or obvious consequences of failing to implement that training or policy.

126.     The City of Charlotte exhibited deliberate indifference to constitutional rights by failing to adopt any policy, training, or supervisory structure to prevent such warrantless

21

entries and identity errors—despite the foreseeable risk of harm and settled constitutional doctrine.

127.     The risk of wrongful arrest was so obvious that the City's failure to implement basic procedural safeguards—such as requiring officers to confirm the suspect's identity before executing an arrest without a warrant—amounted to deliberate indifference.

128.     Upon information and belief, CMPD has not adopted any policy requiring that officers confirm a suspect's identity, verify address accuracy, or present a warrant prior to engaging in ruse-based entries or nonconsensual arrests at dwellings—including hotels. The absence of such policies directly contributed to the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights.

129.     The City also failed to supervise, discipline, or retrain the officers involved following the incident, thereby ratifying their conduct and exposing the constitutional indifference embedded in CMPD's customs and practices.

130.     As a direct and proximate result of the City's unconstitutional policies, practices, and deliberate indifference, Plaintiff suffered the deprivation of liberty, emotional distress, reputational harm, financial losses, and lasting damage to his family relationships.

131.     Plaintiff therefore asserts a claim against the City of Charlotte under 42 U.S.C. § 1983 for municipal liability pursuant to *Monell*, and seeks compensatory damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF:
COMMON LAW MALICIOUS PROSECUTION AND CONSPIRACY
(Against Officers Seth Martin, Jacob Garreston, Marshall Reece, Yael Grazier-Zerbarini, and O. Bailey, Jr., in their individual capacities; and against the City of Charlotte based on the actions of its employees and agents in their official capacities)

132.     Plaintiff incorporates the allegations made in paragraphs 1 through 131 above.

133.     Beginning on or about August 26, 2021, Defendants Martin, Garreston, Reece, and Grazier-Zerbarini, acting individually and in concert, instituted or participated in the institution of criminal proceedings against Plaintiff. These proceedings were not supported by probable cause and were terminated in Plaintiff's favor on or about March 1, 2023, when all charges were dismissed and later expunged under North Carolina law.

134.     Defendants, acting individually and together, demonstrated malice, spite, ill will, and wanton disregard for Plaintiff's rights by conspiring to prepare and by preparing false, incomplete, and misleading investigative reports with the knowledge that these reports would be used to advance and perpetuate the criminal process against Plaintiff.

135.     Defendants Bailey, Grazier-Zerbarini, Martin, Garreston, and Reece, acting individually and in concert, conspired to initiate and sustain criminal proceedings against Plaintiff without probable cause. Each Defendant knowingly relied on uncorroborated and biased allegations, omitted exculpatory facts, and failed to conduct a fair or impartial investigation. Defendant Grazier-Zerbarini authored incomplete and misleading reports and drafted the alleged victim's statement; Defendant Bailey swore out the criminal complaint without verifying its accuracy; and Defendants Martin, Garreston, and Reece executed and supported Plaintiff's arrest and detention. Together, Defendants acted with malice, spite, and reckless disregard for Plaintiff's constitutional rights, causing Plaintiff's unlawful seizure and prosecution.

136.     Defendant Grazier-Zerbarini further demonstrated malice, spite, ill will, and wanton disregard for Plaintiff's rights by drafting the alleged victim's written statement himself rather than securing an independent account, by mischaracterizing minor marks

as evidence of abuse, and by omitting exculpatory facts, including the absence of medical documentation or corroborating witnesses.

137.     Defendants demonstrated malice, spite, ill will, and wanton disregard for Plaintiff's rights by presenting these misleading reports and statements to a magistrate for the purpose of obtaining an arrest warrant, despite knowing that the evidence was insufficient to establish probable cause.

138.     Here, Defendants initiated the earlier proceedings against Plaintiff. Defendants also participated in the prosecution of Plaintiff for Case No. 21CR227067, filed in Mecklenburg County District Court.

139.     Defendants did so with malice, as no reasonable officer would have believed they could enter a hotel room without consent or identifying themselves as law enforcement officers.

140.     Defendants lacked probable cause for the initiation of the earlier proceeding, Case No. 21CR227067, filed in Mecklenburg County District Court.

141.     A person of ordinary prudence and intelligence under the circumstances would have known that the charge had no reasonable foundation. *Becker v. Pierce*, 168 N.C. App. 671, 677, 608 S.E.2d 825, 829–30 (2005).

142.     As a direct and foreseeable consequence of Defendants' conduct, Plaintiff was unreasonably and unlawfully subjected to arrest, detention, and criminal prosecution.

143.     As a direct and foreseeable consequence of being subjected to prosecution, Plaintiff has suffered economic loss, reputational harm, loss of employment, loss of familial association, emotional distress, loss of liberty, and loss of privacy.

24

144.     As a further consequence of being subjected to prosecution, Plaintiff was required

to retain counsel to represent him in protracted criminal proceedings and incurred

expenses associated with defending against the unlawful criminal proceedings initiated

and sustained by Defendants.

**FOURTH CLAIM FOR RELIEF:**
COMMON LAW OBSTRUCTION OF JUSTICE AND CONSPIRACY
(Against Officers Seth Martin, Jacob Garreston, Marshall Reece, and Yael Grazier-Zerbarini, in
their individual capacities; and against the City of Charlotte based on the actions of its
employees and agents in their official capacities)

144.     Plaintiff incorporates the allegations made above.

145.     Between August 26, 2021, and March 1, 2023, Defendants Martin, Garreston,

Reece, and Grazier-Zerbarini, acting individually and in concert, engaged in acts that

attempted to and did prevent, obstruct, impede, and hinder public and legal justice in the

State of North Carolina.

146.     Defendants engaged in this obstruction of justice by conspiring to manufacture

and by manufacturing false, incomplete, and misleading investigative reports with the

knowledge that these reports would be used to advance and perpetuate the criminal

process against Plaintiff.

147.     Defendant Grazier-Zerbarini further engaged in this obstruction of justice by

drafting the alleged victim's written statement on her behalf, mischaracterizing minor

marks as evidence of abuse, and omitting exculpatory facts, including the absence of

medical evaluation, independent witnesses, or corroborating physical evidence.

148.     Defendants engaged in this obstruction of justice by presenting these incomplete

and misleading reports to a magistrate in order to obtain an arrest warrant against

Plaintiff, knowing that probable cause was lacking.

149. Defendants Martin, Garreston, and Reece further engaged in obstruction of justice by executing, supporting, and sustaining Plaintiff's unlawful arrest and prosecution without independently verifying the truthfulness or sufficiency of the evidence.

150. As a direct and foreseeable consequence of Defendants' conduct, Plaintiff was unreasonably and unlawfully subjected to arrest, detention, and criminal prosecution that were sustained by Defendants' continuing unlawful actions.

151. As a direct and foreseeable consequence of being subjected to this obstruction of justice, Plaintiff has suffered economic loss, reputational harm, loss of employment, emotional distress, loss of liberty, loss of familial association, and irreparable harm to his reputation.

152. As a further consequence of being subjected to prosecution, Plaintiff was required to retain counsel to represent him in protracted criminal proceedings and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

### FIFTH CLAIM FOR RELIEF:

VIOLATION OF ARTICLE I, § 19 OF THE NORTH CAROLINA CONSTITUTION
(Against the City of Charlotte directly and based on the actions of City employees and agents in their official capacities)

153. Plaintiff incorporates the allegations made above.

154. As a direct and foreseeable result of the actions of the City of Charlotte and its employees and agents, Plaintiff has suffered deprivations of the rights guaranteed to him under Article I, § 19 of the North Carolina Constitution, including his rights to due process, equal protection of the laws, and freedom from arbitrary government action.

155. As a direct and foreseeable consequence of each of these deprivations, Plaintiff has suffered economic loss, reputational harm, loss of employment, emotional distress, loss of liberty, loss of familial association, and irreparable harm to his reputation and standing in the community.

156. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings wrongfully pursued against him and incurred substantial expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

157. Plaintiff pleads this cause of action as an alternative remedy, should the City of Charlotte prevail in its contention that the other state-law causes of action pleaded herein are barred in whole or in part by principles of governmental immunity.

## DAMAGES

158. As a direct and proximate result of Defendants' unreasonable seizure, Plaintiff was arrested and prosecuted. Plaintiff was denied access to his minor daughter due to a wrongful restraining order based on the fabricated charges. The separation caused emotional and psychological distress that persisted until dismissal of all charges. As a direct consequence of the arrest and prosecution, Plaintiff lost access to classified government systems (SIPR) and was denied business opportunities with the Department of Defense, Department of Energy, hospitals, and other entities. He was required to re-adjudicate his Top Secret clearance. This interruption in career momentum caused measurable financial loss, reputational harm, and emotional distress.

159. As a result of the arrest, Plaintiff's Top Secret clearance was suspended. He lost access to SIPR systems within the National Guard, was excluded from classified federal

contract work, and was denied employment with the Department of Defense, Department of Energy, and affiliated private-sector contractors. These career disruptions significantly impaired Plaintiff's professional standing and financial stability.

160.     Due to the arrest and prosecution without probable cause, Plaintiff incurred compensatory damages, including: the loss of his liberty; attorney's fees; loss of employment; lost earnings; diminished earning capacity; depression, stress, mental suffering, mental anguish, and emotional distress; damage to his reputation, loss of social status, and harassment; inconvenience, humiliation, and embarrassment; loss of familial relationships and friendships; restrictions on personal freedom; and such other damages as may be shown by the evidence.

161.     Defendants are liable for Plaintiff's compensatory damages resulting from the violation of his civil rights.

162.     The unreasonable seizure by Defendants was malicious and/or done in reckless disregard of Plaintiff's civil rights.

163.     Plaintiff is entitled to recover punitive damages from Defendants under 42 U.S.C. § 1983.

164.     Plaintiff is also entitled to recover his reasonable attorney's fees and litigation expenses from Defendants pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for the following relief from Defendants:

1. Compensatory damages;

2. Punitive damages;

3. Reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988;

4. Costs of court and interest as allowed by law;

5. A trial by jury on all contested issues of fact; and

6. Such other and further relief as the Court may deem proper.


Respectfully submitted,


This the 6 day of February, 2026.


BY: _____

Marquis A Hairston
19286 Briarbrook Dr
Tampa, FL 33647-3757
Phone: +1 (703) 336-9650